UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIOTR REYSNER,<br><br>    Plaintiff,<br><br>    v.<br><br>NAVIENT SOLUTIONS, INC., et al.<br><br>    Defendants. | No. 2:17-cv-00641-KJM-KJN PS<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

<u>INTRODUCTION</u>

    Presently before the court is a motion for summary judgment filed by defendant Navient Solutions, LLC, formerly known as Navient Solutions, Inc. (ECF No. 41.)[1] Plaintiff Piotr Reysner filed an opposition to the motion, and defendant subsequently filed a reply brief. (ECF Nos. 45, 46.)[2]

    After carefully considering the written briefing, the court's record, and the applicable law, the court recommends that defendant's motion for summary judgment be GRANTED, and that plaintiff's request for further leave to amend be DENIED, for the reasons discussed below.

---

[1] The action proceeds before the undersigned pursuant to Local Rule 302(c)(21) after the district judge permitted plaintiff's former counsel to withdraw. (ECF No. 29.)

[2] The motion was submitted for decision without oral argument upon the record and written briefing pursuant to Local Rule 230(g). (ECF No. 47.)

1

BACKGROUND

At this case's inception, plaintiff alleged that he completely paid off all his student loans to defendant Navient Solutions in 2002. (ECF No. 1-1 at 13.) Then, fifteen years later in January of 2017, plaintiff was shocked to see that defendant was demanding additional payment for an outstanding student loan debt. (Id.) According to plaintiff, defendant "went silent for 15 years" and "made no demands for payment nor did [defendant] indicate in those intervening years that Plaintiff continued to owe anything." (Id. at 14.) Furthermore, plaintiff stated that upon additional investigation, he found that he did not just pay back his student loans, but he had actually overpaid his loans by $47,140.09, because he had relied in good faith on defendant's representations at the time. (Id.) Therefore, plaintiff claimed that not only did he not owe any money to defendant, but defendant owed plaintiff the amount he overpaid. (Id. at 16.)

However, at the summary judgment stage, plaintiff significantly changed his position and withdrew many of his previous assertions. (See ECF No. 45.) Indeed, his opposition began with the following admission:

> Plaintiff must concede that there are a number of incorrect statements in his Complaint. Much of it was posturing, a lack of memory of certain events from long ago, coupled with supreme frustration. However, whether Plaintiff, for example, did correspond with Navient during the relevant time periods (contrary to what Plaintiff alleged in his Complaint), this does not change the fundamental character of this lawsuit. Simply put, Plaintiff took out student loans repaid some or all of them, and Navient has no idea how much is owed, if anything.

(ECF No. 45 at 1.) Plaintiff further admitted that "[t]his case is about student loan accounting and how much, if anything, Plaintiff may still owe on student loans." (ECF No. 45-3 at 16.) Plaintiff no longer asserts that defendant owes plaintiff any money, or that plaintiff overpaid his loans—his current argument is that "a balance may or may not be owed" to defendant, and that defendant is unable to prove how much money plaintiff owes. (ECF No. 45 at 4; ECF No. 45-3 at 8.)

For purposes of defendant's motion for summary judgment, plaintiff disputes almost every one of defendant's proposed undisputed facts, with the exception of a few notable concessions. (See ECF No. 45-3.) However, plaintiff largely fails to provide any evidence in support of his disputes. Therefore, unless otherwise noted, the basic background facts are deemed

undisputed, which have been verified from the exhibits and declarations offered by defendant.[3]

The undisputed facts show that from 1993 to 2000, plaintiff took out fourteen student loans with Sallie Mae, which were subsequently transferred to defendant. (Compl. ¶ 9; ECF No. 41-3, Ex. 1.) Plaintiff took out four private loans (ECF No. 41-3, Exs. 5, 8, 9, 14), and ten federal loans: four subsidized (ECF No. 41-3, Exs. 4, 7, 10, 12) and six unsubsidized (ECF No. 41-3, Exs. 1-3, 6, 11, 13). (ECF No. 41-3, Ex. 29.) On November 1, 2001, plaintiff's subsidized and unsubsidized federal loans were consolidated into the amount of $66,791.00 ("federal loans"), as evinced by plaintiff's verified signature on the Federal Consolidation Loan Application and Promissory Note. (ECF No. 41-3, Ex. 15; Ex. 41-3, Ex. 31 ["Plaintiff's Depo."] 45:23-24.) Plaintiff also confirmed that he knew he was obligated to pay back his loans in full. (Plaintiff's Depo. 44:13–46:21.)

Plaintiff sent Sallie Mae a letter on January 21, 2002, indicating that he was making a $26,628.49 payment to pay off all his unconsolidated private loans, and that he was also making an $8,000 payment towards his consolidated federal loan.[4] (ECF No. 41-3, Ex. 16.) Sallie Mae sent plaintiff a letter on February 28, 2002, congratulating him for completely paying off the student loans "starred" below—the only loans "starred" were his four private loans. (ECF No. 41-3, Ex. 17.) Additionally, plaintiff spoke on the phone to a representative of defendant on February 28, 2002, who advised plaintiff of his outstanding federal loan and that his next payment was due in August of 2003. (ECF No. 41-3, Ex. 18.)

On March 18, 2004, plaintiff made a $45,000.00 payment towards his federal consolidated loan, and he was made aware at the time that this payment would not completely pay off that loan. (ECF No. 41-3, Ex. 19.) In addition to being verbally informed twice about his outstanding

---

[3] Plaintiff filed voluminous evidentiary objections to defendant's exhibits. The court has considered, but declines to address each individual objection here. Unless specifically addressed in the findings and recommendations, the court overrules those objections as immaterial to the resolution of the motion and/or frivolous.

[4] Plaintiff disputes the accuracy of defendant's asserted amounts of his private loans. (ECF No. 45 at 2.) However, any discrepancies concerning plaintiff's private loans are not at issue, because both parties agree that plaintiff fully paid off the private loans. (ECF No. 41-3, Ex. 17.)

balance, on March 18, 2004, plaintiff accessed his online account and was provided the same information. (Iorio Decl. ¶ 28; ECF No. 41-3, Ex. 19.) On September 23, 2005, Plaintiff submitted a "Request for Forbearance" to defendant concerning his outstanding federal loan.[5] (ECF No. 41-3, Ex. 20.) On April 22, 2008, plaintiff completed an "Automatic Debit Authorization." (ECF No. 41-3, Ex. 21.) By providing his bank checking account information, he permitted his loan servicer to withdraw loan payments.[6] (Id.) Moreover, plaintiff admitted that he accessed his online account fifteen times from 2003 to 2017, and he also had nine phone conversations with representatives of defendant between 2003 and 2008. (ECF No. 41-3, Ex. 26.)[7]

Plaintiff filed a complaint against defendant in Sacramento Superior Court on March 17, 2017. (ECF No. 1-1.) Defendant filed a notice of removal on March 27, 2017. (ECF No. 1-2.) In the complaint, plaintiff asserts claims against defendant for: (1) mistaken receipt; (2) money had and received; (3) declaratory judgment and injunctive relief; (4) unjust enrichment/restitution; (5) demand for accounting; (6) fraud and conspiracy to commit fraud; (7) negligence/gross negligence; (8) violation of the California Fair Debt Collections Practices Act; (9) violation of the California Consumer Credit Reporting Act; (10) unlawful business practices; and (11) fraudulent business practices. (ECF No. 1-1.) Defendant answered the complaint on June 23, 2017. (ECF No. 14.)

Ultimately, defendant filed the instant motion for summary judgment. (ECF No. 41.)

---

[5] Plaintiff disputes that fact because "[t]he purported exhibit was not signed by Plaintiff," even though plaintiff's name is listed on the borrower signature line and the top of the exhibit indicates that the request was submitted using an "online Electronic Signature process." (ECF No. 45-3 at 8; ECF No. 41-3, Ex. 20.)

[6] Plaintiff also disputes that fact because the "exhibit was not signed by Plaintiff." (ECF No. 45-3 at 8.) However, again, plaintiff's name is listed on the line for customer signature and the exhibit shows that "[this] request was submitted using [an] online Electronic Signature process." (ECF No. 41-3, Ex. 21.)

[7] In his admission to those numerous communications, plaintiff raised the single objection that those communications are irrelevant, because "[a]t it's heart, this case is an accounting case. Plaintiff asserts that Navient is unable to prove how much, if any, money he owes. Whether Plaintiff accessed his online account has no bearing on this fact." (ECF No. 45-3 at 8-9.)

4

LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8] A shifting burden of proof governs motions for summary judgment under Rule 56. Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010). Under summary judgment practice, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must establish that a genuine dispute as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d

---

[8] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248). A party opposing summary judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[9] Fed. R. Civ. P. 56(c)(1)(A)-(B). However, the opposing party "must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). However, to demonstrate a genuine factual dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citation omitted).

DISCUSSION

Before addressing the substantive issues in plaintiff's claims, it is important to highlight plaintiff's shifting position from the beginning of litigation until now. Plaintiff initially claimed that "he overpaid his loans by $47,140.09" and that "Defendant accepted the monies and knew or should have known that the money was demanded and paid in error." (Compl. ¶¶ 15, 28.)

---

[9] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

6

According to plaintiff, "Defendant then went silent for 15 years. [It] made no demands for payment nor did [it] indicate in those intervening years that Plaintiff continued to owe anything." (Id. ¶ 16.)

However, at the summary judgment stage plaintiff significantly changed his position, claiming that "[a]t it's heart, this case is an accounting case. Plaintiff asserts that [defendant] is unable to prove how much, if any, monies he owes." (ECF No. 45-3 at 8.) Plaintiff began his opposition by admitting that "there are a number of incorrect statements in his Complaint. Much of it was posturing, a lack of memory of certain events from long ago, coupled with supreme frustration." (ECF No. 45 at 1.) Plaintiff also no longer appears to argue that he overpaid his loans, asserting now that he "repaid some or all of [his student loans]" to defendant. (Id.) He further contradicts the claim that defendant "went silent for 15 years," by now acknowledging that he "did correspond with Navient during the relevant time periods," but just that it "does not change the fundamental character of this lawsuit." (Id.) Moreover, he admitted, "[t]he evidence presented shows only this: Student loans were obtained, payments were made, and a balance may or may not be owed. That's it." (Id. at 4.) Given all those admissions and his complete position change from the initial complaint, plaintiff nonetheless confusingly continues to defend each of his eleven claims from summary judgment. At the end of his opposition, plaintiff merely asserts that "[i]f [the] present causes of action cannot survive, something must." (Id. at 10.)

<u>Defendant's Motion for Summary Judgment</u>

Defendant moves for summary judgment as to all of plaintiff's claims. The court addresses them in the order they were listed, with the exception of Claim 3 (Declaratory Judgment and Injunctive Relief), because that remedy rests on the remaining causes of action.

*Claim 1: Mistaken Receipt*

In response to plaintiff's first cause of action, defendant argues that the statute of limitations bars the claim of mistaken receipt of funds, and that the claim also lacks evidentiary support. (ECF No. 41-1 at 14.) The statute of limitations to bring a money paid by mistake claim is three years from the discovery of the mistaken payment. Cal. Civ. Proc. Code § 338(d); see <u>Holtzendorff v. Housing Authority</u>, 250 Cal. App. 2d 596, 635 (1967).

In his complaint, plaintiff claimed he overpaid his loans by $47,140.09 and that he relied upon defendant's representations in 2002 that his loans had been fully repaid. (Compl. ¶ 15.) Plaintiff also claimed that defendant went silent for fifteen years, only to contact him in January of 2017 demanding an additional payment of $21,000.00. (Compl. ¶¶ 16-17.) Plaintiff did not assert when he learned of the alleged wrongful payment, just that he demanded a refund of the amounts paid in excess of the loan amount, and defendant refused or failed to refund the amount. (Compl. ¶¶ 34-35.) Plaintiff later changed his position, stating that he had "repaid some or all of [his loans]" and that he "may or may not" owe some balance to defendant. (ECF No. 45 at 1, 4.)

The undisputed facts show that on November 1, 2001, plaintiff's federal loans were consolidated into the amount of $66,791.00. (ECF No. 41-3, Ex. 15.) Plaintiff sent a letter to Sallie Mae on January 21, 2002, acknowledging that he was making a $26,628.49 payment to pay off all his unconsolidated private loans and that he was also making a $8,000 payment towards his consolidated federal loan. (ECF No. 41-3, Ex. 16.) Plaintiff received a letter from his loan servicer on February 28, 2002, showing that only his private loans had been paid off. (ECF No. 41-3, Ex. 17.) Furthermore, plaintiff concedes that he spoke on the phone to a representative of defendant on February 28, 2002, who advised plaintiff that his federal loan remained outstanding and the next payment was due in August of 2003. (ECF No. 41-3, Ex. 18.)

On March 18, 2004, plaintiff made a $45,000.00 payment towards his federal consolidated loan, and he was made aware at the time that this payment would not completely pay off his federal loan. (ECF No. 41-3, Ex. 19.) In addition to being verbally informed twice about his outstanding balance of $58.923.33, on March 18, 2004, plaintiff accessed his online account and was provided the same information. (Iorio Depo. at ¶ 28; ECF No. 41-3, Ex. 19.) On September 23, 2005, plaintiff submitted a Request for Forbearance to defendant for his outstanding federal loan (ECF No. 41-3, Ex. 20), and on April 22, 2008, plaintiff completed an Automatic Debit Authorization with defendant (ECF No. 41-3, Ex. 21). Moreover, plaintiff concedes that he accessed his online account fifteen times from 2003 to 2017, and he also had nine phone conversations with representatives of defendant between 2003 and 2008. (ECF No. 41-3, Ex. 26.) This evidence indicates that plaintiff was aware of his outstanding federal loan balance at all

8

times, and that he would have been aware of any improper payment or 'mistaken receipt' by 2004, but in any event no later than 2008. (ECF No. 41-1 at 15.)

Plaintiff counters defendant's argument by asserting that the delayed discovery rule and fraudulent concealment allow the statute of limitations to be tolled. (ECF No. 45 at 5-6.) However, plaintiff provides no plausible evidence that discovery was somehow delayed allowing the claim to survive. He merely states that defendant made no attempts to collect from 2010 to 2017, ignoring the facts showing that plaintiff was well aware of the pertinent facts from 2002 through 2008. (Id. at 6.) Plaintiff also provides no evidence beyond speculative assertion that defendant fraudulently concealed anything from him. (Id. at 6-7.)

In sum, plaintiff filed the complaint on March 17, 2017, more than three years after the discovery of any alleged mistaken payment. (ECF No. 1-1 at 28.) Thus, the statute of limitations bars the first claim of mistaken receipt.

In the alternative, defendant also argues that the claim of mistaken receipt lacks evidentiary support. (ECF No. 41-1 at 15.) To prove a claim for mistaken receipt, a plaintiff must show: (1) that he paid defendant money by mistake; (2) that defendant did not have a right to that money; (3) that he has asked defendant to return the money; (4) that defendant has not returned the money; and (5) the amount of money that defendant owes plaintiff. Utility Audit Co., Inc. v. City of Los Angeles, 112 Cal. App. 4th 950, 958 (2003).

Plaintiff provided no evidence that defendant has received any money that belongs to plaintiff and should be returned to him. Moreover, the undisputed facts show that plaintiff's payments to defendant went towards his outstanding balance on his federal loan. Furthermore, plaintiff admitted in his opposition that defendant did not accept any money by mistake when plaintiff changed his position stating that he "repaid some or all of [his loans]." (ECF No. 45 at 1.) Accordingly, the claim of mistaken receipt also lacks evidentiary support.

For these reasons, defendant is entitled to summary judgement on plaintiff's claim of mistaken receipt.

*Claim 2: Money had and received*

Defendant argues that the statute of limitations bars the second claim of money had and

received and that it additionally lacks evidentiary support. (ECF No. 41-1 at 14.) The statute of limitations to bring a claim for money had and received is two years and does not run until the discovery of the loss. Cal. Civ. Proc. Code § 339(1); see Dhaliwal v. Singh, 2013 WL 2664336, at *7 (E.D. Cal. 2013) (citing Franck v. J.J. Sugarman-Rudolph Co., 40 Cal. 2d 81, 90 (1952)).

As discussed in greater detail above, the undisputed facts show that between 2002 and 2004, plaintiff made multiple payments towards his outstanding federal loan, and was made aware of his outstanding balance from logging into his online account and from phone conversations with representatives of defendant. (See ECF No. 41-3, Exs. 15, 17, 18, 19, 20; Iorio Decl. ¶ 28.) Further, plaintiff concedes that he had at least nine phone conversations with representatives of defendant and that he logged into his online account at least fifteen times between 2003 and 2017. (ECF No. 41-3, Ex. 26; ECF No. 45-3 at 8-9.) This evidence indicates that plaintiff would have been aware of any improper payment or money had and received by 2004, but in any event no later than 2008. Although plaintiff argues that the statute of limitations does not bar this claim because of delayed discovery and fraudulent concealment, he provides no plausible evidence for either argument to support a tolling of the statute of limitations. (ECF No. 45 at 5-7.)

Plaintiff filed the complaint on March 17, 2017, more than two years after the discovery of any alleged money had and received. (ECF No. 1-1 at 28.) Therefore, the statute of limitations bars the second claim of money had and received.

In the alternative, defendant argues that the claim for money had and received lacks evidentiary support. (ECF No. 41-1 at 15.) "A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." Gutierrez v. Girardi, 194 Cal. App. 4th 925, 937 (2011). This claim occurs when a "[defendant] received money which belongs to a [plaintiff], and which in equity and good conscience should be paid over to the [plaintiff]." Id. A plaintiff who has a financial obligation to a defendant is not entitled to restitution if the money was paid in satisfaction of a debt. Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1371 (2010).

Plaintiff has provided no evidence that defendant received any money which was not

10

owed to it. The undisputed facts show that plaintiff's payments to defendant went towards his outstanding balance on his federal loan. Indeed, plaintiff conceded in his opposition that he "repaid some or all of [his loans]." (ECF No. 45 at 1.) Therefore, the claim of money had and received also lacks evidentiary support.

For these reasons, defendant is entitled to summary judgment on plaintiff's claim of money had and received.

*Claim 4: Unjust Enrichment/Restitution*

Defendant argues that the statute of limitations bars the fourth claim of "unjust enrichment/restitution" and it additionally lacks evidentiary support. (ECF No. 41-1 at 16.) The statute of limitations for unjust enrichment based on fraud or mistake is three years from its discovery. Cal. Civ. Proc. Code § 338(d); See Pedersen v. Greenpoint Mortg. Funding, Inc., 900 F. Supp. 2d 1071 (E.D. Cal. 2012) (citing Federal Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 347 (2008)).

As discussed in greater detail above, the undisputed facts show that between 2002 and 2004, plaintiff made multiple payments towards his outstanding loan, and was made aware of his outstanding balance from logging into his online account and from phone conversations with representatives of defendant. (See ECF No. 41-3, Exs. 15, 17, 18, 19, 20; Iorio Decl. ¶ 28.) Further, plaintiff concedes that he had at least nine phone conversations with representatives of defendant and that he logged into his online account at least fifteen times between 2003 and 2017. (ECF No. 41-3, Ex. 26; ECF No. 45-3 at 8-9.) This evidence indicates that plaintiff would have been aware of any improper payment or unjust enrichment by 2004, but no later than 2008. Plaintiff argues that the statute of limitations does not bar this claim because of delayed discovery and fraudulent concealment, but he provides no evidence for either argument to support a tolling of the statute of limitations. (ECF No. 45 at 5-7.)

Plaintiff filed the complaint on March 17, 2017, more than three years after the discovery of any alleged unjust enrichment. (ECF No. 1-1 at 28.) Therefore, the statute of limitations bars the fourth claim of unjust enrichment.

In the alternative, defendant argues that the claim of unjust enrichment lacks evidentiary

11

support. (ECF No. 41-1 at 17.) Under California law, an action for unjust enrichment or restitution "does not lie when an enforceable binding agreement exists defining the rights of the parties." Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996). "Nonetheless, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." York v. American Savings Network, Inc., 2017 WL 3475157, at *3 (E.D. Cal. 2017) (citing McBride v. Boughton, 123 Cal. App. 4th 379, 388 (2004)). "To show that [he] is entitled to restitution, a plaintiff must demonstrate that the defendant is in possession of money or property taken from [him]." York, 2017 WL 3475157, at *3.

The undisputed facts show that plaintiff knew his payments made to defendant were pursuant to his contractual obligation to repay his entire consolidated loan. (Plaintiff's Depo 44:13–46:21.) Defendant was entitled to receive plaintiff's loan payments subject to a valid promissory note. (Id.) Plaintiff has not provided any evidence whatsoever that defendant was unjustly enriched by plaintiff's loan payments. In fact, plaintiff admits in his opposition that he repaid some or all of his loans, contradicting his initial position that he overpaid his loans. (ECF No. 45 at 1.) Accordingly, the claim of unjust enrichment also lacks evidentiary support.

For these reasons, defendant is entitled to summary judgment for plaintiff's claim of unjust enrichment.

*Claim 5: Action for an accounting*

Defendant argues that it is entitled to summary judgment on plaintiff's claim for an accounting because it lacks evidentiary support, and defendant has provided plaintiff with an accounting through the discovery process. (ECF No. 41-1 at 17.)

To bring a claim for accounting, a plaintiff must show: (1) that a relationship exists between the parties that requires an accounting; and (2) that a balance is due from the defendant to the plaintiff that can only be ascertained by an accounting. See Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009). "A right to an accounting is derivative; it must be based on other claims." Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088, 1120 (E.D. Cal. 2014) (citing Janis v. California State Lottery Com., 68 Cal. App. 4th 824, 833-44 (1998)). Furthermore, a plaintiff,

"as the party owing money, not the party owed money, has no right to seek an accounting." Quinteros v. Aurora Loan Services, 740 F. Supp. 2d 1163, 1170 (E.D. Cal. 2010).

Defendant asserts it has provided plaintiff with a detailed payment history through discovery which produced a detailed accounting of plaintiff's loan payments and how they were applied to his respective loans. (ECF No. 41-1 at 18.) Regardless, plaintiff has not established that he is the party owed money by defendant. In fact, plaintiff admitted that he is the party owing money, when he conceded he "repaid some or all of [his loans]" and that "a balance may or may not be owed" to defendant. (ECF No. 45 at 1, 4.) Plaintiff claims "[t]he evidence has established that certain sums were paid" to the defendant and that "[he] is entitled to know how much." (Id. at 7.) But plaintiff has not provided any evidence at all that shows defendant owes him any sum of money. The undisputed facts show that plaintiff is the party owing money, and thus, has no right to seek an accounting. (ECF No. 41-3, Exs. 15, 29.) Moreover, because plaintiff's accounting claim is derivative and the court concludes that plaintiff's other claims fail, plaintiff's accounting claim is likewise not viable.

Accordingly, defendant is entitled to summary judgment on plaintiff's claim of demand for an accounting.

*Claim 6: Fraud and Conspiracy to Commit Fraud*

Defendant argues plaintiff's claim of fraud is barred by the statute of limitations and that it also lacks evidentiary support. (ECF No. 41-1 at 19.) A cause of action for fraud must be brought within three years of the date of the discovery of the fraud. Cal. Civ. Proc. Code § 338(d); See Dougherty v. Bank of Am., N.A., 177 F. Supp. 3d 1230, 1242 (E.D. Cal. 2016).

As discussed in greater detail above, the undisputed facts show that between 2002 and 2004, plaintiff made multiple payments towards his outstanding loan, and was made aware of his outstanding balance from logging into his online account and from phone conversations with representatives of defendant. (See ECF No. 41-3, Exs. 15, 17, 18, 19, 20; Iorio Decl. ¶ 28.) Further, plaintiff concedes that he had at least nine phone conversations with representatives of defendant and that he logged into his online account at least fifteen times between 2003 and 2017. (ECF No. 41-3, Ex. 26; ECF No. 45-3 at 8-9.) This evidence indicates that plaintiff would have

13

been aware of any fraud or conspiracy to commit fraud by 2004, but no later than 2008. At no point does plaintiff address defendant's statute of limitations argument in the opposition.

Plaintiff filed the complaint on March 17, 2017, more than three years after the discovery of any alleged fraud. (ECF No. 1-1 at 28.) Therefore, the statute of limitations bars the sixth claim of fraud and conspiracy to commit fraud.

In the alternative, defendant argues that the fraud claims lack evidentiary support. (ECF No. 41-1 at 20.) To establish a claim of fraud, a plaintiff must present evidence to satisfy each of the following elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). Defendant argues that plaintiff cannot provide any evidence to establish a single element of fraud. (ECF No. 41-1 at 20.) In response to this, plaintiff asserts that he can present evidence at trial of defendant "mismanaging its accounts." (ECF No. 45 at 8.) He also claims fraud has been established because defendant is currently defending other lawsuits from several other plaintiffs for fraud and other causes of action. (Id.) However, to survive a summary judgment claim, plaintiff, as the opposing party, has the burden to show there is a genuine dispute of a material fact by providing evidence or pointing to evidence in the record. Plaintiff has provided no evidence at all that defendant has satisfied a single element of a fraud claim. Accordingly, plaintiff's claim of fraud lacks evidentiary support.

For these reasons, defendant is entitled to summary judgment on plaintiff's claim of fraud.

*Claim 7: Negligence*

Defendant argues that plaintiff's negligence claim is barred by the statute of limitations and that it further lacks evidentiary support. The statute of limitations for a negligence claim is two years. Cal. Civ. Proc. Code § 339; See Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc., 115 Cal. App. 4th 1145, 1154-55 (2004).

As discussed in greater detail above, the undisputed facts show that between 2002 and 2004, plaintiff made multiple payments towards his outstanding loan, and was made aware of his outstanding balance from logging into his online account and from phone conversations with

14

representatives of defendant. (See ECF No. 41-3, Exs. 15, 17, 18, 19, 20; Iorio Decl. ¶ 28.) Further, plaintiff concedes that he had at least nine phone conversations with representatives of defendant and that he logged into his online account at least fifteen times between 2003 and 2017. (ECF No. 41-3, Ex. 26; ECF No. 45-3 at 8-9.) This evidence indicates that plaintiff would have been aware of any negligence by 2004, but no later than 2008.

Plaintiff's sole response to defendant's statute of limitations argument is that defendant's alleged negligence is ongoing because defendant "continues to mismanage its accounts," and "[p]ursuant to the Continuing Wrongs Doctrine, the statute of limitations is equitably tolled." (ECF No. 45 at 8-9.) But plaintiff has not provided any evidence of continuing mismanagement other than his own conclusory allegations.

Plaintiff filed the complaint on March 17, 2017, more than two years after the discovery of any alleged negligence. (ECF No. 1-1 at 28.) Therefore, the statute of limitations bars the seventh claim of negligence.

In the alternative, defendant argues that plaintiff's negligence claim lacks evidentiary support. To establish a claim of negligence, a plaintiff must prove: (1) existence of a legal duty of care; (2) breach of that duty; (3) causation; and (4) damages. McIntyre v. Colonies-Pacific, LLC, 228 Cal. App. 4th 664, 671 (2014). However, "[a] loan servicer does not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract." Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009). Also, "a debt collector owes no duty of care to debtors in the collection of consumer debts." Brandt v. Ocwen Loan Servicing, LLC, 2017 WL 5878581, at *9 (E.D. Cal. 2017). It is undisputed that defendant here acted in its capacity as the servicer of plaintiff's loan. (ECF No. 1-1 at 15.) As such, defendant's conduct did not give rise to any legal duty to support a negligence claim.

Moreover, even if defendant had a duty of care, plaintiff has not provided any evidence that defendant breached a duty owed to plaintiff or that any negligent conduct caused him to suffer any damages. There is no evidence that defendant failed to "maintain good accounting practices," or that it obtained overpayment of plaintiff's loans. (Compl. ¶ 57.) Plaintiff cannot recover on a damages claim because he was contractually obligated to make loan payments

pursuant to valid promissory notes. (Plaintiff's Depo. 44:13–46:13.) See Auerbach v. Great W. Bank, 74 Cal. App. 4th 1172, 1185 (1995). Because plaintiff has provided no evidence to establish a single element of a negligence claim, the claim of negligence lacks evidentiary support.

Therefore, defendant is entitled to summary judgment on plaintiff's negligence claim.

*Claim 8: California Fair Debt Collections Practices Act*

Defendant argues that plaintiff's eighth claim for violation of the California Fair Debt Collections Practices Act ("CFDCPA") lacks evidentiary support. Plaintiff claims defendant violated the CFDCPA by "continuing to collect on debt that has long since been satisfied." (Compl. ¶ 63.) See Cal. Civ. Code §§ 1788, et seq. However, the undisputed facts show that plaintiff's debt was never satisfied and that plaintiff still owes outstanding federal loans to defendant. (ECF No. 41-1 at 23; ECF No. 41-3, Exs. 18, 20, 22-26.) Plaintiff has failed to provide any evidence that his debt was satisfied, and merely asserts that "there is a genuine issue of triable fact on those matters." (ECF No. 45 at 10.) Such conclusory assertions are insufficient to defeat summary judgment.

Accordingly, defendant is entitled to summary judgment on plaintiff's claim for violation of the CFDCPA.

*Claim 9: California Consumer Credit Reporting Act*

Defendant argues that plaintiff's ninth claim for violation of the California Consumer Credit Reporting Act ("CCRA") lacks evidentiary support. Plaintiff argues defendant violated the CCRA by "reporting inaccurate information about plaintiff to one or more consumer reporting agencies," by failing to "provide evidence of the alleged debt" to plaintiff or to the consumer reporting agencies, and by failing to notify plaintiff of "any determination that Plaintiff's dispute is frivolous." (Compl. ¶¶ 67-69.)

The CCRA provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25. To determine if information is incomplete or inaccurate within the meaning of the CCRA, courts are guided by

16

the "patently incorrect or materially misleading" standard set forth in Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009). See Carvalho v. Equifax Information Services, LLC, 629 F.3d 876, 890-91 (9th Cir. 2010) (holding that reported information is incomplete or inaccurate if it is "patently incorrect, or [if] it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions") (citing Gorman, 584 F.3d at 1163).

Here, plaintiff has not provided any evidence that defendant's reporting was patently incorrect or misleading in any way where it adversely affected credit decisions. Nor has plaintiff provided any evidence contradicting the undisputed fact that he still has an outstanding debt for his consolidated federal loan. (ECF No. 41-3, Ex. 29.) The only argument plaintiff makes for why this claim should survive summary judgment is that "there is a genuine issue of triable fact on those matters." (ECF No. 45 at 10.) Again, such a conclusory assertion cannot defeat summary judgment.

Accordingly, defendant is entitled to summary judgment on plaintiff's claim for violation of the CCRA.

*Claims 10 & 11: Unlawful and Fraudulent Business Practices*

Defendant argues that plaintiff's tenth and eleventh claims of fraudulent and unlawful business practices are barred by the statute of limitations and further lack evidentiary support. Plaintiff contends defendant engaged in fraudulent and unlawful business practices in violation of California's unfair competition law ("UCL"), California Business & Professions Code §§ 17200, et seq. The statute of limitations for UCL claims is four years. Cal. Bus. & Prof. Code § 17208; Arzamendi v. Wells Fargo Bank, N.A., 2018 WL 1210978, at *8 (E.D. Cal. 2018).

As discussed in greater detail above, the undisputed facts show that between 2002 and 2004, plaintiff made multiple payments towards his outstanding loan, and was made aware of his outstanding balance from logging into his online account and from phone conversations with representatives of defendant. (See ECF No. 41-3, Exs. 15, 17, 18, 19, 20; Iorio Decl. ¶ 28.) Further, plaintiff concedes that he had at least nine phone conversations with representatives of defendant and that he logged into his online account at least fifteen times between 2003 and 2017.

(ECF No. 41-3, Ex. 26; ECF No. 45-3 at 8-9.) This evidence thus indicates that plaintiff would have been aware of any unlawful or fraudulent business practices by 2004, but no later than 2008. At no point in plaintiff's opposition does he substantively respond to defendant's argument that these claims are time barred.

Plaintiff filed the complaint on March 17, 2017, more than four years after the discovery of any alleged UCL violations. (ECF No. 1-1 at 28.) Accordingly, the court finds the statute of limitations bars plaintiff's UCL claims.

In the alternative, defendant argues claims ten and eleven lack evidentiary support. To prove a claim under the UCL, a plaintiff must show "that the defendant committed a business act that is either fraudulent, unlawful, or unfair." Levine v. Blue Shield of California, 189 Cal. App. 4th 1117, 1136 (2010). "A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law." Ingels v. Westwood One Broad. Servs., Inc., 129 Cal. App. 4th 1050, 1060 (2005). Accordingly, a UCL claim based on such an allegation must rest on a violation of some independent substantive statute, regulation or case law. See Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992) (action under section 17200 borrows violations of other laws). Business conduct is "unfair" under the UCL, when it "offends an established public policy or ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (1984). A business act is "fraudulent" within the meaning of the UCL if it is "likely to deceive the public." McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1471 (2006). In asserting a claim under the UCL's "fraudulent" prong in federal court, a plaintiff must plead facts that meet the particularity requirements of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009).

Here, plaintiff has provided no evidence that defendant's conduct is in violation of any law or that it is likely to deceive the public. The only argument plaintiff makes for why these claims should survive summary judgment is the conclusory assertion that "there is a genuine issue of triable fact on those matters." (ECF No. 45 at 10.) For these reasons, plaintiff's UCL claims lack evidentiary support.

Accordingly, defendant is entitled to summary judgment on plaintiff's UCL claims.

*Claim 3: Action for Declaratory Judgment and Injunctive Relief*

In light of the court's conclusion that summary judgment is appropriate with respect to plaintiff's other claims, plaintiff's claims for declaratory relief and injunctive relief, which are derivative of the other claims, likewise fail. See, e.g., Gayduchik v. Countrywide Home Loans, Inc., 2010 WL 1737109, at *4 (E.D. Cal. 2010) ("[D]eclaratory relief does not serve to furnish a litigant with a second cause of action for the determination of identical issues…Injunctive relief is a remedy which must rely upon underlying claims.").

Plaintiff's Request for Leave to Amend the Complaint

Lastly, plaintiff argues that he should be granted leave to amend if this court determines that all of his present claims cannot survive. (ECF No. 45 at 10.) Although the court, especially in the case of pro se litigants, generally liberally grants leave to amend in the earlier pleadings stage of the action, see Fed. R. Civ. P. 15(a)(2), a pending motion for summary judgment "weighs heavily" against allowing leave to amend. Schlacter-Jones v. Gen. Tel. of California, 936 F.2d 435, 443 (9th Cir. 1991) (overruled in part on other grounds in Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 692 (9th Cir. 2001)). "A motion for leave to amend is not a vehicle to circumvent summary judgment." Id.

Here, the parties had previously stipulated to allow plaintiff to file an amended complaint by November 20, 2017. (ECF No. 25.) However, no amended complaint was filed by that deadline. On April 19, 2018, plaintiff again sought leave to amend the complaint. (ECF No. 35.) However, on May 15, 2018, the court denied that motion, finding that plaintiff had not shown good cause to modify the scheduling order and amend his complaint, because plaintiff had not been diligent in seeking amendment, and the resulting prejudice to defendant and impact on the court's schedule militated against modification of the scheduling order. (ECF No. 40.) Nothing has changed since that time. In his opposition to summary judgment, plaintiff merely asserts that "[i]f plaintiff's present causes of action cannot survive, something must." (ECF No. 45 at 10.) Plaintiff has not shown good cause why leave to amend should be granted at this late juncture. Thus, plaintiff's request for leave to amend should be denied.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 41) be GRANTED IN FULL.
2. Plaintiff's request for further leave to amend the complaint be DENIED.
3. Judgment be entered for defendant.
4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated: November 7, 2018

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE